**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Ledesma,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of the Social Security Administration,<br><br>Defendant. | No. CV-17-01536-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Claimant Cynthia Ledesma's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits and supplemental security income. (Doc. 22). For the following reasons, the Court affirms the denial of benefits.

**BACKGROUND**

Cynthia Ledesma filed for disability benefits on November 4, 2010, alleging a disability onset date of June 11, 2010. (Tr. 557–59). Her claim was denied on April 3, 2013, but that decision was reversed and remanded by the Appeals Council on July 5, 2013. (Tr. 202–26; 220–27). Ms. Ledesma's second unfavorable decision was entered on May 6, 2014, but this decision was also reversed and remanded by the Appeals Council on November 18, 2015. (Tr. 231–52; 253–57). Ms. Ledesma's case was reviewed a third time by an ALJ, with a hearing held on June 2, 2016. The ALJ determined that Ms. Ledesma had the following severe impairments: diabetes mellitus, fibromyalgia, right knee chondramalacia patella, right thoracolumbar facet syndrome, spinal stenosis, small

posterior central annular tear and disk protrusion, lumbar radiculopathy, lumbar stenosis, lumbar spondylosis, obesity, hypertension, chronic pain syndrome, carpal tunnel syndrome, and neuropathy. (Tr. 15). The ALJ found that Ms. Ledesma had the residual functional capacity (RFC) to perform light work with certain exertional limitations. (Tr. 19). The ALJ found that, even with these restrictions, Ms. Ledesma could perform her past relevant work, namely working as a companion, car jockey, and check cashier. (Tr. 26). As such, the ALJ determined that Ms. Klick was not disabled under the Social Security Act. *Id*. The Appeals Council denied the request to review, making the Commissioner's decision final. (Tr. 1–4). Ms. Ledesma now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Legal Standard

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id*. (quotation omitted). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981, F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Claimant alleges that the ALJ erred by (1) improperly weighing the treating physicians' opinions; (2) discounting Claimant's credibility; and (3) improperly weighing a third-party report from Claimant's friend.

### A. Evaluation of Medical Evidence

A "treating physician" is one who actually treats the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating doctor's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons. *Id*. If a treating doctor's opinion is contradicted by another doctor, it may only be rejected for "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. In general, the opinions of treating physicians are given more weight than examining non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See* 20 C.F.R. § 404.1527(c)(1)–(2). In the case of a treating doctor, the ALJ considers the length of the treatment relationship, and the nature and extent of the treatment relationship. *Id*. at § 404.1527(c)(2)(i)–(ii). For all medical providers, the ALJ considers factors such as whether the provider supports their opinion with evidence and whether the opinion is consistent with the medical record. *Id*. at § 404.1527(c)(3)–(6). Where substantial evidence contradicts a treating doctor's opinion, the doctor's opinion is not entitled to controlling weight. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Kevin Theodorou, one of Claimant's treating physicians, provided multiple evaluations. In July 2011, Dr. Theodorou opined that Claimant could not perform full-time work due to her severe back pain with radiation to her legs. (Tr. 832–33). Dr. Theodorou assessed that Claimant would only be able to sit for 2 hours, stand or walk for 2 hours, and lift or carry less than 10 pounds. (Tr. 832). He also noted her fatigue and drowsiness due to pain medication. (Tr. 833). Dr. Theodorou assessed similar limitations in July 2012 (Tr. 1678–79) and August 2012 (Tr. 1077–78). The ALJ assigned minimal weight to Dr. Theodorou's opinions, stating that "the extreme restrictions assess by

Dr. Theodorou were inconsistent with objective medical and clinical findings discussed throughout this decision and the inconsistencies between the claimant's subjective limitations and available medical evidence of record, addressed above." (Tr. 24). Claimant argues that the ALJ erred in rejecting Dr. Theodorou's opinion by failing to state precisely what medical evidence was inconsistent and by relying on her own evaluation of the medical evidence. Even if the ALJ did err, it was harmless because the ALJ had extensively discussed such objective evidence in other parts of the opinion. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). ALJs may consider whether physicians' opinions are consistent with the medical records. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008) (affirming the ALJ's consideration of a physician's responses being inconsistent with medical records); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Although the ALJ did not provide a specific citation to the record after that statement, the earlier parts of the ALJ's opinion provide a detailed discussion of the medical record relating to Claimant's back and leg pain. (Tr. 20–23). That discussion indicated inconsistencies with Dr. Theodorou's assessment: Claimant's MRI's showed only mild degenerative disc disease, Claimant was assessed to have a normal gait and normal strength in her lower extremities, Claimant's use of a cane was not medically necessary, Claimant did not appear to regularly take her pain medication, and Claimant was regularly found to not be in acute distress. *Id*. The ALJ did not err in discounting Dr. Theodorou's opinions.

Dr. Midhum Malla treated Claimant at a pain management practice. In September 2015, Dr. Malla opined that because of Claimant's fibromyalgia, Claimant could sit, stand, or walk for less than 2 hours, would need to alternate positions every 1–20 minutes and then rest for 5–9 minutes, and would miss over 6 days of work a month. (Tr. 1459–

60). In April 2016, Dr. Malla stated that Claimant's back and knee pain would allow Claimant to sit, stand, or walk for 2 hours, and that Claimant would need to alternate positions ever hour and then rest for over 15 minutes. (Tr. 1676–77). Dr. Malla also noted Claimant's moderately severe headaches and side effects from the prescription Lyrica. *Id*. The ALJ assigned Dr. Malla's opinions minimal weight because "treatment records from Sun Pain Management indicated that the claimant had very few treatment visits with Dr. Mall[a]," the "extreme limitations assessed by Dr. Mall[a] were inconsistent with treatment records from Sun Pain Management and inconsistent with examination results," and the assessments were "inconsistent with factors assessed above, which included screening tests where the claimant was negative for medication on several occasions, suggesting the claimant was not as limited." (Tr. 25). Claimant argues that the ALJ erred by failing to detail the inconsistencies. As discussed with Dr. Theodorou, the ALJ's opinion had earlier discussed at great length the inconsistencies in the record. The ALJ did not err by incorporating that discussion by reference in evaluating Dr. Malla's opinions. Moreover, the ALJ also gave less weight to Dr. Malla's opinion because of his limited treatment relationship with Claimant. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ also discounted Dr. Malla's opinions because Claimant had failed to follow treatment and medication recommendations. The ALJ did not err in giving less weight to Dr. Malla's opinions.

Nurse Practitioner Linda Halloran also treated Claimant at Sun Pain Management. Ms. Halloran stated in March 2013 that Claimant could not sit, stand, or walk for more than 2 hours. (Tr. 1241–42). Ms. Halloran further opined that Claimant would need to move positions every 20 minutes, with a 5–9 minute rest afterwards. (Tr. 1241). Ms. Halloran also noted that Claimant suffered from side effects due to her medication that would likely take her off task at work. (Tr. 1242). A second form with the same date and assessing the limitations is also signed by Ms. Halloran and another physician,

Dr. Ronald Burns. (Tr. 1243–44). The ALJ assigned minimal weight to Ms. Halloran's opinion. The ALJ determined that the "assessed extreme treatment limitations were inconsistent with treatment records and examination results from Sun Pain Management . . . where Ms. Halloran treated the claimant." (Tr. 25). The ALJ also noted that the "urine drug screen testing was negative for prescribed pain medication . . . which strongly suggests her symptoms were not as limiting as alleged." *Id*. As discussed with both Dr. Theodorou and Dr. Malla, the ALJ permissibly incorporated her earlier discussion of the inconsistencies in Claimant's record. The ALJ did not err in giving minimal weight to Ms. Halloran's opinion.

Claimant further asserts that the ALJ erred by assigning great weight to the consultative examiner, Dr. Monte Jones. (Tr. 813–21). Dr. Jones examined Claimant in May 2011. Dr. Jones found that Claimant had a range of motion within acceptable limits, had normal muscle strength, a slow but normal gait, and that Claimant made position changes without difficulty. (Tr. 813–17). Dr. Jones determined that Claimant required restrictions limiting the amount of lifting and carrying, but that she could stand or walk for 6–8 hours and could sit without limitation. (Tr. 819). The ALJ also assigned partial weight to opinions of Dr. Angel Gomez and Dr. Paul Bendheim, consultative examiners. Dr. Gomez opined in February 2016 that the Claimant could sit for 8 hours in a day and stand or walk for 5 hours. (Tr. 1461–70). Dr. Bendhein assessed Claimant one day after Dr. Gomez in February 2016. He believed Claimant's conditions would not impose a disabling limitation for 12 continuous months. (Tr. 1472–82). The ALJ resolved the inconsistencies between Dr. Gomez and Dr. Bendheim's reports by finding that the Claimant did have severe limitations, but that Claimant was not precluded from all work. (Tr. 24). Claimant argues that these opinions do not constitute substantial evidence. But, "the reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Magallanes v. Brown*, 881 F.2d 747, 752 (9th Cir. 1989). Drs. Jones, Gomez, and Bendheim all examined Claimant in person, reviewed her medical records, and wrote detailed reports. Claimant provides no explanation as to why these consultative

examiners' opinions do not constitute substantial evidence. Claimant also argues that the timing of the opinions necessitates them being afforded less weight. Claimant specifically notes that Dr. Jones' opinion was issued in May 2011, while the ALJ's decision was issued in September 2016. Claimant does not explain what medical evidence has changed since Dr. Jones' report that would render it less relevant. It does appear that Claimant developed carpal tunnel syndrome since Dr. Jones' report, and the ALJ accounted for this by adding fingering and handling restrictions to the RFC. (Tr. 23). Further, Dr. Gomez and Dr. Bendheim examined Claimant and issued their reports in February 2016, a time significantly close to the ALJ's order. Even if Dr. Jones' report were to be considered too stale, Dr. Gomez and Dr. Bendheim's reports were recent and sufficient to constitute substantial evidence. The ALJ did not err in weighing the reports of the medical providers.

### B. Claimant's Credibility

When a claimant alleges subjective symptoms, like pain, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. The ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan*, 169 F.3d at 599.

///

The ALJ determined that Claimant's statements about her symptoms were not entirely credible. The ALJ noted multiple inconsistencies between Claimant's allegations of pain and contemporaneous medical records. After her June 2010 fall, for example, Claimant reported significant pain in her knee and back. But, the medical records contained many negative test results. (Tr. 20). With regards to Claimant's pain in her upper extremities, the ALJ noted that Claimant had report significant pain at a July 30, 2012 appointment but that Claimant reported having minimal issues at an August 10, 2012 appointment. (Tr. 21). Claimant had also alleged pain in her lower extremities, but the ALJ found that this was inconsistent with lengthy medical records reflecting a normal gain and normal strength. *Id*. Claimant reported using a cane, but the ALJ observed that the cane was not prescribed by a doctor, was reported by a physician to be adjusted too high to be of physical benefit, and that Claimant was able to ambulate well without the cane. (Tr. 22). The ALJ also considered Claimant's failure to follow through with her treatment. Claimant's drug screening tests were negative for prescription pain medications, which the ALJ asserted was evidence that Claimant's pain was not as severe as alleged. *Id*. Finally, the ALJ also found that the Claimant's activities of daily living, such as preparing meals, caring for her daughter, doing chores, driving, and visiting with others, were indicative of an ability to function at a higher level than alleged. (Tr. 23).

Claimant argues that the ALJ erred by "rel[ying] on her own perceived expertise in interpreting the medical records." (Doc. 22, p. 23). As an example, Claimant states that the ALJ noted a physician's findings that Claimant had no muscle atrophy, no joint swelling, and a normal motor exam. *Id*. Claimant asserts that the ALJ erred by not explaining how these findings detracted from the overall severity of Claimant's condition. *Id*. Claimant also points to the ALJ's statement that medical records reported that Claimant was not in acute distress. (Tr. 22–23). Claimant argues that she has chronic pain, and so considerations of acute pain are meaningless. (Doc. 23, p. 24, n. 20). ALJs may consider "inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). And, "[a]lthough lack of medical evidence cannot form the sole

basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Id*. at 681. Here, the ALJ properly weighed and evaluated some of the inconsistencies between Claimant's pain testimony and the medical evidence. As noted above, the ALJ discussed multiple bases for discounting Claimant's testimony and the lack of medical evidence was just one factor.

Claimant also objects to the ALJ's statement that Claimant was assessed with positive Waddell's signs, a test that has been used to detect malingering with regards to back pain. Claimant states that there is no evidence to support the ALJ's assumption. But, the medical record cited by the ALJ discusses Waddell's signs, and states "[p]ositive for axial loading" and "[t]he patient is grimacing, slightly exaggerated pain behavior." (Tr. 760). Thus, there is evidence to support the ALJ's statement that the Claimant was assessed with positive Waddell's signs. Claimant cites some medical research that questions the association between Waddell's signs and malingering. (Doc. 22, p. 24, n. 21). Claimant, however, does not cite any administrative ruling from the Social Security Administration or other case law discrediting Waddell's signs. It is not this Court's role to review medical research. Even if Waddell's signs are inappropriate considerations, this was only one piece of evidence cited by the ALJ, and substantial evidence supports the ALJ's determination.

Finally, Claimant asserts that the ALJ erred by considering Claimant's activities of daily living. Claimant argues that there is no inconsistency between the reported activities of daily living and her alleged symptoms. The ALJ noted that Claimant "was able to prepare meals, care for her daughter, perform household chores, drive, and visit with others." (Tr. 23). The ALJ considered these activities, finding them "not dispositive of the claimant's claim" but that they "demonstrated that the claimant was able to function at a higher level than alleged." *Id*. ALJs may consider claimants' activities of daily living. *See Burch*, 400 F.3d at 680–81 (holding that the ALJ was permitted to consider the claimant's daily living activities of cooking, cleaning, shopping, interacting with family, and managing finances); *Morgan*, 169 F.3d at 600 ("If a clamant is able to spend a

substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting [here, fixing meals, doing laundry and yard work, and caring for a friend's child], a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). The ALJ properly weighed Claimant's activities of daily living. The ALJ noted that these considerations were not dispositive, but were one fact assessed in considering the credibility of Claimant's reported pain.

### C. Third-Party Report

Darlene Peredia, a family friend of Claimant's, completed a third-party adult function report. (Tr. 708–15). Ms. Peredia filled out the form in 2012, and had known Claimant since 2008. (Tr. 708). Ms. Peredia sees Claimant once or twice a week to help Claimant cook, clean, and drive. *Id*. Ms. Peredia stated that Claimant sleeps most of the day due to her medication and that she is constantly in pain. (Tr. 709). Ms. Peredia also noted that Claimant cannot stand or sit for too long because her back hurts, cannot walk long distances, cannot climb stairs, and has difficulty with pain in her hands. (Tr. 713). The ALJ determined that "Ms. Peredia's statements and observations were not persuasive of a more restrictive residual functional capacity because Ms. Peredia was not an acceptable medical source and Ms. Peredia's statements and observations were inconsistent with available medical evidence of record." (Tr. 26).

ALJ's may consider evidence from nonmedical sources. 20 C.F.R. § 404.1513(a)(4), § 404.1529(c), § 404.1545(e); SSR 16-3p. This testimony is "competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations and emphasis omitted). To discount the testimony of a lay witness, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Although the ALJ may have erred by discounting Ms. Peredia's opinion because she was not a medical source, any error was harmless. The ALJ also discounted Ms. Peredia's statements for being inconsistent with the medical evidence in the record, which was thoroughly detailed earlier in the ALJ's opinion. The ALJ considered Ms. Peredia's statements and

gave reasons germane to her statements in discounting the opinion.

## CONCLUSION

The ALJ did not err in weighing the medical opinions of Claimant's treating physicians. The ALJ cited specific and legitimate reasons for giving less weight to the physicians. The ALJ properly evaluated Claimant's credibility, making detailed findings of inconsistencies in the record. The ALJ considered the Claimant's friend's third-party report, but rejected it for being inconsistent with the record, a reason germane to the witness.

**IT IS THEREFORE ORDERED** that the ALJ's decision to deny disability benefits and supplemental security income is affirmed. The Clerk of Court is directed to enter judgment accordingly.

Dated this 6th day of September, 2018.

_____
G. Murray Snow
Chief United States District Judge